967 F.2d 594
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Delbert George LEE, Defendant-Appellant.
 No. 91-10252.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 9, 1992.
Decided June 19, 1992.
 
 Before BOOCHEVER, REINHARDT and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Delbert George Lee appeals his jury conviction and sentence under the Sentencing Guidelines for aggravated sexual abuse, in violation of 18 U.S.C. §§ 1153, 2241(a)(1) and 2245(2)(A). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 DISCUSSION
 
 3
 I. Admission of expert testimony from forensic serologist
 
 
 4
 Lee argues that the district court committed reversible error in allowing the government's forensic serologist, Benita Harwood, to testify that intercourse could have occurred without subsequent detection of semen. A trial court's decision to admit expert testimony is reviewed for an "abuse of discretion or 'manifest error' ". United States v. Dorotich, 900 F.2d 192, 194 (9th Cir.1990) (quoting United States v. Binder, 769 F.2d 595, 601 (9th Cir.1985)).
 
 
 5
 Fed.R.Evid. 702 provides for the admission of expert testimony if scientific or other specialized training will "assist the trier of fact to understand the evidence or to determine a fact in issue." Admission of such testimony requires that the expert opinion be helpful to the trier of fact, United States v. Angiulo, 897 F.2d 1169, 1189 (1st Cir.), cert. denied, 111 S.Ct. 130 (1990), and that the witness be qualified to give the testimony sought. Furthermore, an expert may testify about the limits of obtaining evidence. Cf. United States v. Christophe, 833 F.2d 1296, 1300 (9th Cir.1987) (affirming admission of FBI agent's testimony as to why latent fingerprints are obtained in only a small percentage of bank robbery cases); but cf. United States v. Booth, 669 F.2d 1231, 1240 (9th Cir.1981) (upholding exclusion on relevance grounds of criminologist's testimony explaining why no fingerprints were found).
 
 
 6
 Lee contends that Harwood's testimony should have been excluded because it was beyond the scope of her expertise. Cf. United States v. Marabelles, 724 F.2d 1374, 1381 (9th Cir.1984) (upholding exclusion of testimony from bank loan expert regarding costs of producing income absent showing that he was a tax expert). By opining on the possibility of penetration, a critical issue, the expert testimony allegedly prejudiced his right to a fair trial.
 
 
 7
 We disagree. The government sufficiently demonstrated that Harwood was qualified to testify that intercourse could have occurred without leaving evidence of semen. The government laid a foundation as to Harwood's expertise in the identification of blood and bodily fluids, including her thirteen years of experience as a forensic serologist and her training on blood and semen stain analysis. She had examined items of evidence for blood and body fluid stains thousands of times and had testified several hundred times as an expert in various courts. It was well within the district court's discretion to infer that the scope of her expertise in the identification of bodily fluids included knowledge of conditions under which such bodily fluids could not be identified.
 
 
 8
 Moreover, Harwood's testimony on this issue was probably helpful to the jury. As the government points out, it may not be easy for some laypersons to infer why no seminal fluid would be found if intercourse had taken place. Cf. Christophe, 833 F.2d at 1300 (expert testimony helpful where inference "not so easy" for jury to make). The possible reasons for the absence of seminal fluid in the victim's vaginal swabs, then, may have assisted the trier of fact in determining whether penetration had occurred. If the testimony was not helpful to the jury, it would be because the reasons for absence of semen where penetration has occurred are of such common knowledge that the jury could be assumed to be aware of the fact. The introduction of the evidence thus could not be prejudicial. In any event, the weight of the medical evidence indicated that penetration did occur, thereby rendering any error harmless.
 
 II. Pre-indictment delay
 
 9
 Lee also claims that the district court erred in denying his motion to dismiss the indictment due to pre-indictment delay. This court reviews claims of due process violations arising from pre-indictment delay for an abuse of discretion. United States v. Gonzalez-Sandoval, 894 F.2d 1043, 1050 (9th Cir.1990).
 
 
 10
 To establish a Due Process Clause violation arising from pre-indictment delay, Lee must satisfy a two-pronged test. First, he must prove that the delay caused him "actual prejudice." If actual prejudice is established, the court then weighs the length of the delay against the government's reasons for the delay. Id. The defendant's proof of actual prejudice "must be definite and not speculative, and the defendant must demonstrate how the loss of a witness and/or evidence is prejudicial to his case." Id. (quoting United States v. Moran, 759 F.2d 777, 782 (9th Cir.1985), cert. denied, 474 U.S. 1102 (1986)).
 
 
 11
 Lee raises two claims of prejudice for the first time on appeal; neither claim establishes actual prejudice. First, Lee argues that "a lingering prosecution of this nature contains an inherently prejudicial quality" because he was required to "put his life on hold." See Appellant's Br. at 12. Lee, however, fails to support this assertion by pointing to specific examples by which his life was put "on hold" and caused him actual prejudice. Such conclusory assertions fail to satisfy the definite proof of prejudice necessary to establish a denial of due process. See, e.g., United States v. Valentine, 783 F.2d 1413, 1416-17 (9th Cir.1986) (rejecting similarly "generic" allegations about the types of prejudice that pre-indictment delay may cause). Because he fails to satisfy the first prong of the test, we need not address the government's reasons for the delay. Gonzalez-Sandoval, 894 F.2d at 1051.
 
 
 12
 Lee also claims prejudice because he had been arrested and charged by tribal authorities for the same offense over one year earlier. Whether he is arguing that the Speedy Trial Act was violated, as the government apparently believes, or that he was prejudiced because tribal arrests do not trigger the statutory time limits of the Act, we find little merit in either argument.
 
 
 13
 Assuming Lee is claiming that the Speedy Trial Act was violated, he failed to raise such a claim below. Absent plain error, the argument is not properly before this court on appeal. See United States v. Tercero, 640 F.2d 190, 195 (9th Cir.1980), cert. denied, 449 U.S. 1084 (1981). The Speedy Trial Act requires that an "indictment charging an individual with ... an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b) (1988). It is well-established, however, that only a federal arrest triggers the statutory time limits of the Act. See, e.g., United States v. Manuel, 706 F.2d 908, 914-15 (9th Cir.1983) (four month delay between tribal arrest and federal indictment did not violate Speedy Trial Act). A federal indictment charging Lee with aggravated sexual abuse was filed on October 3, 1990 and a summons in connection with this charge was issued on October 4, 1990. Hence, the requirements of § 3161(b) of the Speedy Trial Act were satisfied. Cf. United States v. Adams, 694 F.2d 200, 202 (9th Cir.1982) (no violation of Act where federal indictment was filed prior to federal arrest on same day), cert. denied, 462 U.S. 1118 (1983). We find no plain error.
 
 
 14
 Alternatively, if Lee is arguing that his tribal arrest provides a separate basis for prejudice under a due process analysis, again he fails to demonstrate how he suffered actual prejudice by the tribal arrest's failure to trigger the Speedy Trial Act. Cf. Gonzalez-Sandoval, 894 F.2d at 1051 (rejecting defendant's claim of prejudice that, absent pre-indictment delay, deported witnesses would be available and that certain evidence would have been suppressed). Accordingly, we conclude the district court did not abuse its discretion by denying Lee's motion to dismiss.
 
 III. Double Jeopardy
 
 15
 Lee next contends that his Fifth Amendment protection against double jeopardy was violated when he was prosecuted for an offense for which he had already been convicted in a tribal court. Lee, however, failed to raise his double jeopardy claim in the federal district court. See United States v. Flick, 716 F.2d 735, 737 (9th Cir.1983) (defendant has obligation to raise a double jeopardy claim before the end of trial). Even if his claim had been timely raised, United States v. Wheeler, 435 U.S. 313 (1978), governs this case. Wheeler holds that the double jeopardy clause does not bar federal and tribal prosecutions for charges arising out of the same incident. Id. at 329-32. We therefore find no violation of the double jeopardy clause.
 
 IV. Acceptance of Responsibility
 
 16
 Finally, Lee challenges the district court's refusal to grant a two-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. This essentially factual determination is reviewed for clear error. United States v. Gonzalez, 897 F.2d 1018, 1019 (9th Cir.1990).
 
 
 17
 U.S.S.G. § 3E1.1 provides for a two-point reduction in a defendant's offense level if he "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." Although a defendant need not accept blame for conduct of which he may be accused, he must show contrition for the crime of which he was convicted. United States v. Piper, 918 F.2d 839, 841 (9th Cir.1990) (per curiam). Because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility," the Guidelines' commentary suggests that "the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1 comment. (n. 5) (1990).
 
 
 18
 The record supports the district court's refusal to grant Lee a reduction in his offense level. Lee consistently denied responsibility for aggravated sexual abuse, the criminal conduct of which he was convicted. At his sentencing hearing, he said:
 
 
 19
 And I have listened to the charges and I stand on my innocence, that I did not rape her.
 
 
 20
 * * *
 
 
 21
 My innocence I stand for. As long as I live I did not rape her.
 
 
 22
 Thus, although Lee admitted tearing the victim's underwear and touching her between the legs, this falls short of an acceptance of responsibility for aggravated sexual abuse, which was defined to include vulva-to-penis contact. Cf. United States v. Ramos, 923 F.2d 1346, 1360 (9th Cir.1991) (district court did not clearly err in finding no acceptance of responsibility due to defendant's minimalist description of activities in the convicted crimes, given evidence suggesting a much greater involvement in the crimes).
 
 
 23
 Lee nonetheless cites authorities from other jurisdictions to support the proposition that he deserved a reduction in his offense level because he acknowledged wrongdoing and was genuinely contrite. See, e.g., United States v. Big Crow, 898 F.2d 1326, 1330 (8th Cir.1990) (upholding finding of acceptance of responsibility where, despite defendant's doubt that he had intentionally injured the victim, he acknowledged that his drinking caused him to lose control and expressed strong remorse); United States v. Floyd, 738 F.Supp. 1256, 1257 (D.Minn.1990) (finding defendant had accepted responsibility due to, inter alia, her sincere remorse for actions and her demonstrated desire to remain drug free). Significantly, however, neither of the defendants in the cases Lee cites denied committing the crime of conviction, as Lee did here. Moreover, in both cases, the district court found that the defendant's behavior reflected an acceptance of responsibility, whereas Lee asks us to find clear error in Judge Broomfield's determination. We conclude that the denial of the reduction for acceptance of responsibility was not clearly erroneous.
 
 
 24
 Lee's conviction and sentence are AFFIRMED.
 
 
 25
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3.